Good morning, Your Honors. I would like to reserve three minutes of time for rebuttal. Please watch the clock. Thank you. The court below granted reconsideration and then the summary judgment motion based on its finding that there was a, quote, clear change in controlling law because Smith clarified the test that the court was to apply. We submit that this drains the term change of any significant meeting and it would change a remedy that is meant to be used sparingly into one that becomes routine. And for that reason, the reconsideration and eventual granting of the summary judgment motion was improper. Now, of course, in Hatton there were four elements as to whether this would be dischargeable, whether the return purported to be a return, whether it was signed under penalty of perjury, whether it was sufficient data, and whether it was an honest and reasonable attempt. Smith, of course, applied the exact same four elements. None were added. None were deleted. In fact, the government in the 2014 argument expressly argued that under Ninth Circuit law, it is the prevailing precedent. So throughout the entire period. The district court said, and I think the argument raised by opposing counsel, is that at the time when it looked at the, it denied the motion for summary judgment, the law was unsettled. So APSIPA had been enacted with a new definition of what a return was. And the district court cases were all over the map. And so the bankruptcy court goes, can't tell at this point. And then Smith came down with its ruling. And then the bankruptcy court ruled. So what was wrong with that? Well, first of all, I know you said it was unsettled. But there was not a change. And in fact, the Martin case. There was a change right then, right? Because APSIPA came out with a different interpretation of return than what we had had before. Well, I mean, first of all, my understanding of the court's explanation was it was the change was Smith. Well, Smith didn't happen until. So the first time the bankruptcy court ruled. 2014, right? It said the law is unsettled, and so I'll deny the motion for summary judgment. Then the law was settled because the Ninth Circuit came out with Smith. And then the court ruled based on Smith. And so granted the summary judgment in favor of the government. So what was wrong with doing that? I mean, the denial obviously was interlocutory, the original denial. You can't. It's not a final order. But the bankruptcy court certainly has authority to then rule on summary judgment once the law is settled. Why not? Well, I mean, I would say first of all, I would not entirely agree with that, that the law was unsettled in the sense that the law applied. It continued to apply. Now, there might have been some uncertainty. Just a minute. I don't think you're listening very carefully to my good colleague's question. The question was the bankruptcy court said the law is unsettled. They said, I don't know which way to go. And they denied the summary judgment. So at that point, it's still in front of them. It hasn't moved any place. You can't appeal it because the case isn't over. So at that point, then another case comes down, Smith. And it says exactly what we suggest the law is. And then it says, well, I denied it before. But now, reading Smith, I'm going to change my mind. Why is that wrong? Well, I mean, procedurally. Procedurally, there's nothing there. It's still in front of the bankruptcy court. The summary judgment was denied. So why is there any reason that they can't go back and say, now, having denied this before, we've got more precedent, let's do something about it? Well, again, I would note that in 2014, the bankruptcy court did not, I mean, I guess what Your Honor is saying is that if Hatton applied, would the court, I mean, if Hatton Well, whether Hatton applies or not, my question is very simple. Even if I was sitting on the bankruptcy court and Hatton applied and I applied it wrong and I denied summary judgment and thereafter a decision came out and I said, you know, I got Hatton wrong. As long as I denied it, why can I not take it back up, especially if I've got a motion in front of me? Well, part of it. What rule says I can't take that back up? It's still in front of me. It hasn't left my desk. Well, again, the problem was this was not, this was, there was not the opportunity to present the evidence. I think not. What the problem is is that we're now talking about why can't they take it up. You can talk about what you should be able to apply or what you should not be able to give in taking it back up. And we'll get to that question. But the question is why can't they take it back up? Well, I would submit that the court granted reconsideration. It wasn't simply. Well, it granted reconsideration, whether it granted reconsideration under 60B or whether it granted reconsideration under 59E or whether it granted reconsideration just on the general authority of the court, which many times in the district court before me, we granted reconsideration just by our inherent authority. We didn't have a rule. We now find a couple of rules that we can look at. But we had the inherent authority. If we had denied a summary judgment, we would take it back up. And we got a lot of cases that say I can do that. I cited them then and I can cite them to you now. But the problem comes in her question, which I thought was a very important one, which you ought to answer, why can't they take it back up? It's denied. And now they've had a change of mind. Tell me why they can't take it up. What they can consider on that or what they should consider is a different question. Well, I would assert that, first of all, in 2016, there was no opportunity at that point to present any different evidence. That was one of the concerns. So you're saying that they could take it up, that the bankruptcy court could reconsider the summary judgment motion or look anew at the summary judgment motion, but they didn't do it in the right way. Is that your argument now? I mean, we are certainly not asserting that the government is forever barred from bringing a motion for summary judgment. That's not the position. The position is that, and part of the problem below was that there was some supposedly newly discovered evidence that was brought in, that there ought to be the same procedures so that each party can present evidence. There can be the findings of fact. The party should be able to address whatever intervening authorities have come up. You did file an opposition to the government's motion. And what would you have brought up based on the law under Smith that you didn't have a chance to bring up? I mean, that's the kind of question that, you know, I would urge this court to look at Martin, where the Martin court said that there was an improper process. Let's remand this and let the bankruptcy court consider this, especially here where there was some concern that it wasn't a level playing field, that there was some newly discovered evidence that was presented. So you're not pointing at anything specific you would have raised? I mean, I certainly can't say, oh, this particular piece of evidence, although I know there was some concern about the deposition that came in. But that's why, you know, there ought to be, and I would just urge this court, I know you can say everything is under the court's authority, but there's a particular process for reconsideration. The court expressly said, I'm citing a new rule. And at the time, there was, I would like to actually reserve the remainder of my time. Maybe you could answer a few more questions. Okay. It seems to me that I was looking to see really what it is that you're really after here. You had a meaningful opportunity to set out your position. You responded. You won't tell me what evidence you could not put before the court that you would have. In the record, there was a statement of undisputed facts with a motion for reconsideration. This was the same statement of facts that you agreed to in the original motion for summary judgment. You never disputed the facts in the deposition excerpts. I'm not even for sure the bankruptcy court really considered the deposition testimony. I'm trying to figure out how are you hurt. Well, again, that's one of the, I mean, Your Honor, yourself says, well, we're not really sure if they considered it or not. But just a minute. I'm trying to figure out how are you hurt. Because there was a statement of undisputed facts with which you agreed. You did have a meaningful opportunity to set out your position, and you did. You can't tell me that you've got any more evidence, or at least you haven't yet. I'm trying to figure out, you don't dispute the facts in the deposition excerpts. What have I got left to do? I mean, again, there ought to be the procedural opportunity, especially after Smith. Procedural opportunity to give me what? I keep asking you, what? To address those cases. In particular, what the court's finding Smith so significant is how does Smith, I mean, if the law had been so unsettled. You're not saying then you needed more, you'd have more evidence. You're saying you want another opportunity to address the law? Well, there's never been an opportunity to address Smith. Another opportunity to address the law then? The law and? But here, what is the reason that the law that the poor bankruptcy court used when Smith came out, why is what they said wrong? I think what they said was absolutely correct based on Smith. Okay, well, first of all, regarding Smith. Smith did not take the position. It could have taken the position, and considered the position, it did not take the position that any post-assessment filing cannot qualify. And, in fact, the Martin court expressly said Congress could have conditioned discharge based on whether the return was filed prior to the assessment or not, and it declined to do so. So the court expressed, the Smith court expressly rejected that rule. Now, in this case, if you just look at the numbers, for example, the amount of delay in filing was about half of what it was in Smith. So if the court's position is Smith completely controls, and after Smith you have no argument whatsoever, I would respectfully disagree with that. Do you think there's a delay problem? Is that your best argument? Well, what I'm saying is there's less. Do you think the length of the delay is the argument? It seemed to me that when a taxpayer attempts to file a return after the IRS has assessed a deficiency, then the taxpayer has not made an honest and reasonable attempt to comply with the tax laws. That's the rule. Well, I would respectfully suggest that that's not the rule. That's not the rule. Well, that's exactly the rule Hutton had. And Smith said it was the rule. No, Smith considered the question of whether a late filing, whether a post-assessment filing did not qualify, and it declined. We need not decide whether any post-assessment filing could be honest and reasonable in this case. So it could have adopted that rule. It did not. And, in fact, the Martin Court, citing Nunez, did not, rejected that rule, saying we have to look at all the facts, whether it's an honest and reasonable attempt, and it's not as if there's this absolute bar any time it's late. It could have done that, but it did not. And, in fact, the court, the bankruptcy court itself at the 2014 hearing said, made that, expressed that position but rejected it, saying you're saying that if a taxpayer, for whatever reason, doesn't get the job done in time, it cannot possibly be an honest and reasonable attempt. But the court rejected that position. Martin, the next year, rejected that position. And Smith did not adopt that position. So part of the... All right. I got your argument, and I took you over. I'm sorry. We've taken you well over your time, but we'll give you a minute in rebuttal. Just a minute or so. Thank you. Thank you very much. Thank you, Your Honors, and may it please the court. Julie Avetta for the United States. Judge Smith's recitation of the rule in this circuit for dischargeability is entirely correct. And based on the correct application of that rule, the bankruptcy court committed no error in granting summary judgment in favor of the government upon reconsideration.  And there was no abuse of discretion in the procedural means by which it did so. So opposing counsel points to the language in Smith, leaving open the question of whether any post-assessment filing could be honest and reasonable. In other words, that there could be a circumstance when a post-assessment filing does count as a return. How do you respond to that? That language in Smith was directed toward a dispute in the state of the understanding of the hanging paragraph at the time. As the court has noted, the law was unsettled in 2013-2014, and the last two bankruptcy courts in California to consider whether a late-filed Form 1040 could lead to a discharge applied the rule originally adopted by the Eighth Circuit in Colson, which said if you file a Form 1040, it's a return and you're good. The only circuit court that had taken a position on that at that time was the Fifth Circuit, post-BACA. The earlier cases, Hatton and the other circuits to consider it before the statute was amended, generally adopted the four-prong test, the Beard test that we've discussed. But after the amendment that added the hanging paragraph to Section 523A1B, the Fifth Circuit read that hanging paragraph and said, oh, look at this. The definition of a return has now been incorporated into this statute, and what this means is that now a filing, a return must comply with applicable non-bankruptcy law, including applicable filing requirements. The filing deadline is a filing requirement. If you file late, you have not complied with applicable filing requirements and you have not filed a return that will lead to a discharge under this. The Smith court was addressing that distinction. Well, there's a difference between being a day late in filing and filing post-assessment. Exactly. Those seem to be different standards. Yes. And the latter of those was an argument that the IRS had adopted, which no circuit has since taken up. But the position that the government took fairly consistently for some time was that assessment should be viewed as the dividing line because read as a whole, Section 523A1B spoke of a debt to be discharged and that assessment was the key moment at which you could determine the debt to be discharged. So we declined to accept that dividing line. So how do we know that three, four, five years, as in this case, is enough to say it's not a return, whereas one day we've held open whether one day post-assessment is enough? If I understand your question correctly, Your Honor, are you asking how much time is reserved? No, we're on summary judgment. And the question is whether there's a genuine issue of material fact that what was filed post-assessment is not a return. And Smith declined to create a bright-line rule. So how do we know there's no genuine issue of material fact as to whether it was too late or not? The timing of the filing of the returns here is not in dispute. And the bankruptcy court found that these facts were concentric with Smith. It was not a close case. The debtor owed tax for 2001, 2002, and 2003 and did not file those returns until July of 2007. And that was enough to persuade the bankruptcy court that he had not made an honest and reasonable attempt to satisfy the requirements of the tax law. The Smith court did not take, and we do not now urge this court to take a categorical position on exactly how many years or months or days is reasonable or unreasonable because, and I think that the Smith court reasonably took this position, it's going to depend on the circumstances of the debtor. If something has legitimately impaired you from complying with your obligations under the tax code. You're in the hospital. You're in a coma. You're a prisoner of war. Terrible things are happening to you. The court has reserved discretion to give you some room on that. It did not adopt the extremely harsh one-day late rule from McCoy and Mollo and Fahy. It did not adopt the IRS's argument that the date of the assessment of the debt should be the dividing line with respect to the debtor's good faith because what the court ostensibly was doing was to say, we're going to look at the debtors who come in here and present this argument to us. And it is, we're going to reserve to ourselves the assessment of the debtor's good faith compliance with the tax code. And that's what was done here. The bankruptcy court looked at the facts. Once it became clear that Smith adopted the Hatton Standard, the Ninth Circuit was not going to follow the Fifth and the First and the Tenth and go with the one-day late rule, and it was not going to follow the Eighth and go with a file a form and you're done rule. The Ninth Circuit is, the Ninth Circuit adopted the rule that said, we're going to look at you, debtor, and see what you've done. Is that consistent with the language in the revised statute and the revised regulation, the revised definition of return? This court has so held. Well, we didn't actually hold that. We just said the parties agree that we can just continue with our Hatton test. Smith was several years ago, but to the best of my recollection. As we have not interpreted this new definition, but both parties in several of our sister circuits agree that Hatton's four-factor test still applies. So we declined to interpret the new definition is how I read that. That is in reference to the decision of the Eleventh Circuit in Christopher Justice, which issued shortly prior to the Smith decision. And that was out of the Eleventh Circuit. And in that decision, Judge Anderson did some fairly significant analysis of the one-day late rule and the Beard test and determined there that the applicable non-bankruptcy law was not limited to the letter of the Internal Revenue Code. The Eleventh Circuit decided that the new paragraph post-BABCA in 523A1B incorporated what the law was at the time, including judicial law, including the Beard test. And was the Beard test non-bankruptcy law? The test was tax law. It was tax law? I thought it was determining when it was a return for dischargeability purposes. It's not limited to that. Beard came out of the tax court. And it was not a bankruptcy case. It was not a dischargeability case. It was a decision of the tax court that was adopted and affirmed by the Sixth Circuit in 1986. And the tax court formed the four-factor test from two much older Supreme Court cases, because what that court was doing at that time was deciding whether a stack of paper met the definition of a return. And the challenge there was that the Internal Revenue Code didn't define the return. There was no statutory definition for what a tax return was. But what historically a return has been is a reporting of information sufficient for the government to determine the tax that is owed. And these four factors came from old Supreme Court case law and came together in the tax court. The Sixth Circuit liked it, adopted it, went with it. The Ninth Circuit picked it up in Hatton. The Seventh Circuit picked it up in Payne. The Sixth Circuit followed it in Hindenlang. The Fourth Circuit followed it in Maroney. And then they amended the statute, the bankruptcy statute, not the tax code. The Beard test remains the standard for determining whether a filing constitutes a return under the bankruptcy law. Okay, that's helpful. Thank you. So my one of the arguments that I think counsel makes may be the strongest argument he's making is that the government didn't do this right procedurally to have a motion to reconsider. It seems to me that counsel's suggesting that you moving under 60B was not the appropriate rule, that in fact that's not a place to really bring a motion to reconsider on this summary judgment because 60B is a final judgment. So what's your response? We agree that 60B is limited by its language to final judgments and orders and that the denial of a summary judgment motion is a categorically non-final interlocutory order. Your Honor yourself noted that earlier. Your Honor also noted that 60B does not constrain the ability of a trier of fact to reconsider earlier interlocutory orders so long as that court retains jurisdiction over the proceeding, and that's what happened here. The bankruptcy court could have reconsidered the denial of summary judgment sua sponte. It didn't need a government motion at all. It received a government motion that was styled as a 60B motion, but as we cited extensively in our brief, the styling of a motion does not affect the relief that a court is able to grant pursuant to that motion. And a motion that asked for judgment in favor of the government could have been called any one of a number of things, but if it provided adequate basis for the court to grant judgment in favor of the government, then there's no error in granting that motion, and that's what happened here. And I see my time is up. Thank you. We'll give you a minute for rebuttal. Thanks so much. Again, Smith, though Congress could have created this bright-line rule, Smith could have created this bright-line rule, and the court was waiting for Smith, and conceivably if Smith had gone a different direction, then I think this would have been a lot more understandable. But Smith simply reaffirmed it's honest and reasonable, it's a full inquiry, and it was really short-circuited here because the decision went one way, and then it changed. There was no ñ all the analysis that had gone before was gone, and there was not the procedural opportunity to present those arguments. And I would just note that, as I think Your Honor pointed out, Smith is really at a much more outer limit as to what qualifies as honest and reasonable. And, therefore, regardless of the facts of Smith, these facts are different, and this could ñ a decision in favor of my client could coexist with Smith. They would not be in conflict, and, therefore, I submit it does not control the case. Thank you very much. I appreciate it. We thank both parties for their argument. And the case of John Fremont v. United States is submitted.
judges: Ikuta, N.R. Smith, Steeh